United States District Court
District of Massachusetts

_____
                               )
ROBERT WHITE                   )
        Plaintiff-Appellant,   )
                               )        Bankruptcy Appeal No.
        v.                     )        11-11828-NMG
                               )
KUBOTEK CORP.,                 )
KUBOTEK USA, INC.              )
        Defendants-Appellees.  )
                               )
_____        )

MEMORANDUM & ORDER

GORTON, J.

      In this protracted bankruptcy dispute arising from the

liquidation of the assets of CADKEY Corporation ("CADKEY"),

unsecured creditor Robert White ("White" or "appellant")

challenges the Bankruptcy Court's statutory and constitutional

authority to enter a final order dismissing his claims against

Kubotek Corporation ("Kubotek") and its wholly-owned subsidiary

Kubotek USA, Inc. ("Kubotek USA") (collectively, "appellees").

This Court has jurisdiction pursuant to 28 U.S.C. § 158.

I.    Facts

      CADKEY is a recently-dissolved software company formerly

based in Marlborough, Massachusetts.  White is a software

designer who developed FastSURF and FASTSolid, computer-aided

design programs.  In 1998, CADKEY entered into an agreement with

White to purchase the rights, source code and trademarks in

FastSURF and FASTSolid in exchange for royalty payments totaling 2.5% of its gross sales on those products for seven years, up to a maximum of $2.5 million.  Included in the purchase agreement was an assignment clause requiring CADKEY's successors, if any, to assume CADKEY's obligations under the contract.

Two years before the contract's expiration, CADKEY filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the District of Massachusetts ("the Bankruptcy Court").  In the course of bankruptcy proceedings, CADKEY moved for the sale of its assets to the highest bidder.  An auction was held and Kubotek was the highest bidder.  With the Bankruptcy Court's approval, CADKEY entered into an Asset Purchase Agreement with Kubotek providing for the sale of CADKEY's assets, including its interests in FastSURF and FASTSolid.  White objected to the Asset Purchase Agreement on the grounds that 1) the sale had been conducted precipitately and therefore did not yield the highest price and 2) Kubotek was an insider of CADKEY.  The Bankruptcy Court considered his objections but allowed the sale to proceed.

 In November 2003, the Bankruptcy Court authorized the Asset Purchase Agreement pursuant to 11 U.S.C. § 363 ("the Sale Order"). Finding the statutory criteria for sale to be present, the Bankruptcy Court ruled that the purchased assets

> shall be free and clear of any and all encumbrances, including, without limitation, all claims, if any, arising from the operation or cessation of the Debtor's business, whether arising prior to or subsequent to the

commencement of the Debtor's case under chapter 11 of the
Bankruptcy Code.

The Sale Order also contained a provision enjoining all persons
and entities from initiating an action or proceeding against
Kubotek challenging the asset sale.

## II.  **Background Litigation**

Despite the injunction, White has burdened the federal
courts with an unrelenting succession of cases and appeals over
the past eight years challenging the asset sale to Kubotek.

In 2003, White objected to the Kubotek sale both before and
after the transaction occurred, primarily arguing that the sale
had been conducted summarily to the sellers's detriment.   The
Bankruptcy Court dismissed his objections and upheld the sale.
White appealed that decision but this Court upheld it. See In re
Cadkey Corp., 317 B.R. 19 (D. Mass. 2004).   When the First
Circuit Court of Appeals affirmed, White filed a petition for
writ of certiorari to the United States Supreme Court.   After
that petition was denied, White filed a motion for rehearing and
that, too, was denied.

In 2004, White filed a motion to vacate the Sale Order with
the Bankruptcy Court, alleging on that occasion that counsel for
CADKEY and Kubotek defrauded the Bankruptcy Court in advocating
for the proposed sale.   When that motion was denied, he moved for
reconsideration.   When that motion was denied he appealed to this

Court which affirmed the decision of the Bankruptcy Court. <u>See</u> <u>In re CK Liquidation Corp.</u>, 332 B.R. 72 (D. Mass. 2005).  White attempted to appeal directly to the Supreme Court but his appeal was rejected as improperly filed.

The saga continued.  In 2006, White filed yet another motion to vacate the Sale Order, this time asserting that 1) the Sale Order violated his due process rights, 2) 11 U.S.C. § 363(f)(3) was inapplicable to his contract with CADKEY, 3) his interest was not a lien and 4) Kubotek should be required to make him whole. The Bankruptcy Court denied the motion and enjoined him from filing any further papers, pleadings or documents challenging the Sale Order. <u>In re CK Liquidation Corp.</u>, 2006 WL 1302614 (Bkrtcy. D. Mass. 2006).  That ruling was upheld on appeal.

III.  **<u>Procedural History</u>**

Undaunted in his quest to recover the outstanding royalty payments, White filed his Complaint for successor liability and fraudulent conveyance against Kubotek and Kubotek USA in the Massachusetts Superior Court for Middlesex County.  He sought money damages in an amount identical to his proof of claim filed in the 2003 bankruptcy proceeding.  Appellees timely removed the case to federal court (for reference to Bankruptcy Court) and promptly moved to dismiss.  The next day, White filed a motion to remand the case back to state court.

The Bankruptcy Court summarily dismissed the case ("the

-4-

Dismissal Order") before White had the opportunity to respond to the motion to dismiss or defendants had the opportunity to respond to the motion to remand. The Bankruptcy Court ruled that removal of the case from Massachusetts Superior Court was warranted by the retention of jurisdiction provision in the Sale Order and dismissed White's claims on the grounds that he "admitted" he was "once again attempting to relitigate the validity of the Sale Order." Thereafter, White filed an opposition to the motion to dismiss, a motion for reconsideration of the Dismissal Order and two "amendments" to his motion for reconsideration. The Bankruptcy Court denied the motion for reconsideration.

On October 17, 2011, White appealed to this Court, challenging the Bankruptcy Court's Dismissal Order and its denial of his motion for reconsideration. The parties filed lengthy appellate briefs and White filed another motion to remand, which appellees opposed. In addition, White filed seven "supplemental briefs" alerting the Court to new developments in the law and wrote a personal letter to the Court requesting that it reach a decision on his appeal "sooner rather than later."

## IV. <u>Analysis</u>

The United States District Courts have jurisdiction to hear appeals from final orders of a bankruptcy court. <u>See</u> 28 U.S.C. § 158. In reviewing an appeal from an order of a bankruptcy court, a district court reviews <u>de</u> <u>novo</u> conclusions of law but

must accept the bankruptcy judge's findings of fact unless they are clearly erroneous. TI Fed. Credit Union v. DelBonis, 72 F.3d 921, 928 (1st Cir. 1995).  In reviewing a denial of a motion for reconsideration, a district court may grant reconsideration only if the Bankruptcy Court's denial demonstrates a "manifest" abuse of discretion. Appeal of Sun Pipe Line Co., 831 F.2d 22, 25 (1st 1987).

Appellant attacks the Bankruptcy Court's order the grounds that it lacked both subject matter jurisdiction over his claims and the statutory and constitutional authority to issue an order. He contends that the Court erred when it concluded that his claims were barred by res judicata.

Appellant's arguments compel this Court to examine a number of issues, some of them complicated and many of them interrelated.  They are, in succession: A) whether the Bankruptcy Court had subject-matter jurisdiction under 28 U.S.C. § 1334 to adjudicate appellant's claims, B) whether the Bankruptcy Court had statutory authority under 28 U.S.C. § 157 to enter a final order, C) whether the Bankruptcy Court's entry of a final order violated Article III of the United States Constitution and D) whether the Bankruptcy Court's judgment was sound.

## A.   Did the Bankruptcy Court Have Subject-Matter Jurisdiction?

Bankruptcy courts have subject-matter jurisdiction to hear civil proceedings arising under, in or related to Title 11. 28

-6-

U.S.C. § 1334(b).  "Arising under" proceedings are those cases in which the cause of action is created by Title 11.  In re Middlesex Power Equipment & Marine, Inc., 292 F.3d 61, 68 (1st Cir. 2002). "Arising in" proceedings are "those that are not based on any right expressly created by Title 11, but nevertheless would have no existence outside the bankruptcy."  Id.  "Related to" proceedings are those that "potentially have some effect on the bankruptcy estate."  Id.

The Bankruptcy Court had subject-matter jurisdiction in this case because White's claims "arose in" Title 11.  Although framed as state law claims, both of White's claims depend on an interpretation of the Bankruptcy Court's Sale Order and an attack on its legitimacy.  His fraudulent conveyance claim is principally founded on his assertions that Kubotek's bid price for the property was materially low and that Kubotek was not forthright and timely in disclosing the nature of its relationship with CADKEY to the Bankruptcy Court.  That claim "has no existence" outside the bankruptcy because the transaction is authorized by the Sale Order.  In fact, the remedy for fraudulent conveyance is for the court to vacate the transaction that was induced fraudulently.  See Henry v. Provident Funding Assoc., 2012 WL 2913502 at *2 (Mass. Super. 2012) ("A fraudulent conveyance ... is a transfer that may be set aside by a creditor of the transferor under certain circumstances to recover the debt

owed to it.").

Likewise, White's successor liability claim asserts that
Kubotek is liable to him on CADKEY's debt.  Again, that
transaction was governed by the Sale Order which approved the
sale of property "free and clear of any and all liens, claims,
encumbrances and other interests."  Therefore White's successor
liability claim is viable only if a court determines that the
Sale Order does not invalidate his claim.  A dispute involving a
subsequent purchaser's interpretation of a sale order "free and
clear of all liens" under subsection 363(b) of title 28 of the
United States Code is also an "arising in" proceeding. Middlesex
Power, 292 F.3d at 67.

Because the Bankruptcy Court clearly had "arising in"
jurisdiction, this Court need not determine whether it also had
"arising under" or "related to" jurisdiction.

**B.   Did the Bankruptcy Court Have Statutory Authority To
       Enter A Final Order**?

As found in the preceding section, bankruptcy courts have
subject-matter jurisdiction to hear all civil proceedings
arising under, in or related to Title 11. 28 U.S.C. § 1334(b).
Their statutory authority to issue final orders, however, is not
coextensive with their jurisdiction.  A bankruptcy court may
enter a final order only in "core" proceedings or "non-core"
proceedings in which the parties have consented to the entry of a
final order. See 28 U.S.C. § 157(b)(1), (c)(2).  A bankruptcy

-8-

court also has authority to issue any order, process or judgment that is "necessary or appropriate to carry out" a prior order. 11 U.S.C. § 105(a).

"Core" proceedings include, but are not limited to, the 16 kinds of cases enumerated in 28 U.S.C. § 157(b)(2). Id.  Under 28 U.S.C. § 157 (b)(2)(N), the bankruptcy court's issuance of a sale order of property to third parties who have not filed a claim against the estate qualifies as a core proceeding.  28 U.S.C. § 157(b)(2)(N).

The Bankruptcy Court had statutory authority to rule because interpreting and enforcing an order resulting from a prior "core proceeding" also constitutes a "core proceeding."  The 2003 Sale Order, in which the Bankruptcy Court approved the sale of the subject property "free and clear of any and all liens, claims, encumbrances and other interests," was a "core" proceeding according to the plain language of 28 U.S.C. § 157(b)(2)(N).  As discussed supra, White's fraudulent conveyance and successor liability claims hinge on the interpretation and enforcement of the Bankruptcy Court's order in that core proceeding.  Thus, the Bankruptcy Court had statutory authority to enjoin litigation that attacked its prior order because doing so was "necessary" to carry out the Sale Order. Cf. In re Savage Industries, Inc., No. 92-30027-F, 1993 WL 763407 at *5 (D. Mass. 1993) (finding court would have had authority to enjoin litigation if its Sale Order

granted property "free and clear" of prior obligations); see also
In re Texaco, Inc. 182 B.R. 937, 943-44 (Bankr. S.D.N.Y. 1995)
(bankruptcy court's interpretation and enforcement of a previous
order is a "core" proceeding); In re Kiker, 98 B.R. 103, 103-04
(Bankr. N.D. Ga. 1988) (same).

White argues that the Supreme Court's recent decision in
Stern v. Marshall, 131 S. Ct. 2594 (2011) removed the Bankruptcy
Court's statutory authority because the proceeding no longer
qualifies as "core."  To the extent that Stern alters the
analysis of what constitutes a "core" proceeding, the Bankruptcy
Court still had statutory authority to issue the Dismissal Order
in this case.  In Stern, the Supreme Court stressed that
determinations as to whether a proceeding is core and whether it
"arises in" Title 11 are one and the same. See Stern, 131 S.Ct.
at 2605 ("Under our reading of the statute, core proceedings are
those that arise in a bankruptcy case or under Title 11.").
Admittedly, the Stern Court held that if a proceeding is core, it
must "arise in" a case under Title 11 but the Court did not
address the issue of whether a proceeding that "arises in" a
Title 11 case is core. See id.  However, the First Circuit has
indicated that proceedings that "arise in" a case under Title 11
are core. Cf. In re G.S.F. Corp., 938 F.2d 1467, 1475 (1st Cir.
1991) (abrogated in part on other grounds, Connecticut Nat'l Bank
v. Germain, 503 U.S. 249 (1992)) ("Core proceedings involve

rights created by the Bankruptcy Act, they depend on the Bankruptcy Act for their existence. ... Related proceedings do not arise under the Bankruptcy Act.")  In determining whether the Bankruptcy Court had jurisdiction to hear White's claims, it has been established that the proceedings "arise in" a case under Title 11.  Therefore, the proceedings are core and the Bankruptcy Court, by statute, has authority to issue a final order.

Moreover, to the extent that the <u>Stern</u> Court consolidated the jurisdictional and "core" inquiries, it is well-settled that a bankruptcy court has statutory jurisdiction to decide matters pertaining to enforcement of its prior orders. <u>Travelers Indem. Co.</u> v. <u>Bailey</u>, 557 U.S. 137, 151 (2009).  Because the Bankruptcy Court clearly had subject matter jurisdiction to interpret its prior order, it follows that the proceeding also falls within the "core" category.

**C.   Did the Bankruptcy Court's Entry of A Final Order Intrude Upon the Exclusive Jurisdiction Granted to Federal District Courts by Article III?**

White's constitutional challenge to the Bankruptcy Court order alleges that its order is unconstitutional because it decides a right that is reserved for adjudication by an Article III court.  The Supreme Court addressed this issue in <u>Stern</u> v. <u>Marshall</u>, so this Court's analysis follows accordingly.

**1.   The Public Rights Exception after <u>Stern</u>**

The Supreme Court has long held that pursuant to Article III

-11-

of the United States Constitution, Congress may not "withdraw from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law, or in equity, or admiralty." Murray's Lessee v. Hoboken Land & Improvement Co., 59 U.S. 272, 284 (1856).  An exception lies over cases involving "public rights," i.e., rights created by the government. Id. Congress is free to delegate the judicial determination of public rights to non-Article III courts. Id.

In Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 102 S.Ct. 2858 (1982), the Supreme Court clarified the scope of the "public rights" exception as it pertains to Article I bankruptcy courts.  While the Court did not reach a consensus on the breadth of the exception, a majority concluded that it did not include the particular claim at issue: a state law contract claim against an entity uninvolved with the bankruptcy proceedings. See id. at 89-91.

In response to Northern Pipeline, Congress enacted the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("the 1984 Act").  The 1984 Act permits district courts to refer all cases under Title 11, all proceedings arising under Title 11 and all cases arising in or related to a case under Title 11 to bankruptcy judges. 28 U.S.C. § 157(a).  In addition, the 1984 Act divided bankruptcy-related matters into "core" and "non-core" proceedings. 28 U.S.C. § 157(b)-(c).  Bankruptcy courts may enter

final judgments only in core proceedings unless the parties consent. Id.  In non-core cases that are related to a case under Title 11, bankruptcy courts may not enter final orders but rather must "submit proposed findings of fact and conclusions of law to the district court." Id. at § 157(c)(1).

In Stern v. Marshall, the Supreme Court held that an Article I bankruptcy judge lacks constitutional authority to enter final judgment on a state law counterclaim not resolved in the creditor's proof of claim process even though the claim was properly designated as "core" under the 1984 Act. 131 S.Ct. at 2611.  Because the 1984 Act had given bankruptcy courts final adjudicative authority over a kind of claim outside the scope of the "public rights" exception, Congress exceeded the limitations of Article III, at least in "one isolated respect." Id. at 2620. The Stern Court stresses that the holding was "narrow," and that it would not "meaningfully change[] the division of labor" between district courts and bankruptcy courts." Id.

### 2.   Stern Analysis

In determining whether a bankruptcy court has jurisdiction to issue a final order under the Stern standard, a reviewing court must consider two issues.  First, it must determine whether the bankruptcy court has statutory authority under the bankruptcy code, which effectively involves consideration of whether a proceeding is "core" or not. See Stern, 131 S.Ct. at 2604-05; In

re Ortiz 665 F.3d 906, 911-12 (7th Cir. 2011); In re Lacey,
Bankruptcy No. 10-19903-JNF, 2011 WL 5117767 at *5 (Bankr. D.
Mass. 2011).  Second, if a proceeding is "core," the court must
determine whether the bankruptcy court nonetheless lacks
constitutional authority to issue a final order. See Stern 131
S.Ct. at 2608.

        **a.**       **Was the subject dispute "core"?**

As discussed supra, the Bankrupcty Court proceeding
adjudicated whether White's state law claims were barred by its
2003 Sale Order.  A bankruptcy court proceeding whereby the court
interprets a prior order is a "core" proceeding.

        **b.**       **Did the Bankruptcy Court Have
Constitutional Authority?**

Whether the Bankruptcy Court had constitutional authority
depends on whether White's claims fall within the "public rights"
exception.  In determining whether a proceeding falls within the
"public rights" exception, the Court considers whether the
proceeding stemmed from the bankruptcy itself or would
necessarily be resolved in the claims allowance process. See id.
at 2618 (holding that although the bankruptcy court had statutory
jurisdiction to enter final judgment under 28 U.S.C. §
157(b)(2)(C), it lacked constitutional jurisdiction because it is
not an Article III court).  If either question can be answered in
the affirmative, the Bankruptcy Court has authority to issue a
final order because the proceeding falls within the "public

-14-

rights" exception.  Id.; see also In re Freeway Foods of
Greensboro, Inc., 466 B.R. 750, 768 (M.D.N.C. 2012).

In Stern, the appellant had been precluded from raising a
claim for tortious interference with an expected gift, asserted
as a counterclaim to a defamation claim brought against the
bankruptcy estate. 131 S.Ct. at 2618.  The Supreme Court reasoned
that the counterclaim was "in no way derived from or dependent
upon bankruptcy law" and that it was a "state tort action that
exists without regard to any bankruptcy proceeding." Id. at 2618.
The creditor's actions before the debtor filed for bankruptcy
served as the basis for the claim and the Court held that the
claims allowance process would play no role in resolution of the
dispute. See id.

In contrast, the proceedings here arise out of the
bankruptcy itself and are necessarily resolved in the claims
allowance process.  In White's case, his suit arises from the
2003 Sale Order authorized by the Bankruptcy Court.  Had it not
been for the sale of assets under the Bankruptcy Court's
oversight, White's fraudulent conveyance claim would be non-
existent and his liability claim would be against CADKEY, not the
defendants.

White argues that fraudulent conveyance claims do not fall
within the "public rights" exception on the basis of
Granfinanciera S.A. v. Nordberg, 492 U.S. 33 (1989).  However, in

-15-

that case the fraudulent conveyance claim was brought by the bankruptcy estate against a third-party non-claimant and the alleged fraudulent transfer occurred prior to and apart from the bankruptcy petition. See id. at 36.  Under those circumstances, the Supreme Court reasoned that, because the appellants had not filed claims against the estate, the fraudulent conveyance action did not arise "as part of the process of allowance and disallowance of claims." Id. at 58.  Here, again, White's fraudulent conveyance claim is not exempted because it does not exist outside the bankruptcy proceedings: the fraudulent conveyance alleged is the transaction approved by the Sale Order.

### D.   Was the Bankruptcy Court's Decision on the Merits Sound?

White appeals from an adversary proceeding in which the Bankruptcy Court dismissed his claim on the ground that he was "once again attempting to re-litigate the validity of the Sale Order" and admitted as much in his response to Kubotek's motion to dismiss.  The Court will treat that decision as holding that White's claims were barred as a matter of res judicata.

### 1.   Legal Standard

The prevailing rules of res judicata and collateral estoppel apply to the decisions of bankruptcy courts. F.D.I.C. v. Shearson-American Exp., Inc. 996 F.2d 493, 497 (1st Cir. 1993). Res judicata bars the litigation of a legal issue resolved in an earlier suit if:

-16-

> 1) the earlier suit resulted in a final judgment on the
> merits, 2) the causes of action asserted in the earlier
> and later suits are sufficiently identical or related and
> 3) the parties in the two suits are sufficiently
> identical or closely related.

Airframe Sys., Inc. v. Raytheon Co., 601 F.3d 9, 14 (1st Cir.

2010).  The Bankruptcy Court's approval of the 2003 Sale Order

was a valid final judgment. See Shearson-American, 996 F.2d at

498 (finding bankruptcy judgment to be valid final judgment for

res judicata analysis).  Both White and Kubotek Corporation were

parties to the prior proceeding and Kubotek USA is in privity

with Kubotek Corporation for the purpose of these proceedings as

it is a wholly-owned subsidiary and currently holds the assets

that gave rise to White's claim. See id. at 497 (stating res

judicata bars "all parties and their privies") (emphasis added).

Therefore, the principal point of contention here is whether the

causes of action asserted in the two suits are "sufficiently

identical or related."

In determining whether the second prong of the res judicata

doctrine is met, the court must apply a "transactional approach,

in which the court considers whether the underlying factual bases

for the causes are "related in time, space origin or

motivation...."  Silva v. City of New Bedford (Silva II), 660

F.3d 76, 79 (1st Cir. 2011) (quoting Airframe, 601 F.3d at 15).

In other words, there is a sufficiently close relationship

-17-

between the relevant facts in both suits if the claims in both facts "derive from a common nucleus of operative facts." <u>Id.</u>

### 2.    Fraudulent Conveyance

White's fraudulent conveyance claim arises from the same "nucleus of operative facts" that has been previously litigated. While White claims that his actions pertain to Kubotek's in personam actions independent of the 2003 Sale Order, all of his factual allegations involve Kubotek's actions in the process of procuring the 2003 Sale Order.  White principally alleges that the Bankruptcy Court was induced to approve the 2003 Sale Order by Kubotek's failure to provide timely and accurate information regarding its relationship to the bankruptcy estate.  This Court has already rejected White's claim that the sale had been conducted "too quickly." <u>In re Cadkey Corp.</u>, 317 B.R. 19, 21 (D. Mass. 2004).  While White provides additional information regarding Kubotek's actions in the process of gaining bankruptcy court approval of the 2003 Sale Order, White's claim nonetheless revolves around the validity of the transaction.  White could have raised the additional factual allegations in his initial opposition to the 2003 Sale Order.  He provides no compelling reason for considering those allegations now.

### 3.    Successor Liability

Appellant's successor liability claim demands money damages from Kubotek USA in an amount identical to his proof of claim

-18-

filed in the original bankruptcy proceeding.  This state law claim unambiguously contradicts the 2003 Sale Order which approved and authorized the sale of the disputed assets "free and clear of any and all liens, claims, encumbrances and other interests."  It is difficult to perceive how two proceedings could more closely share a "common nucleus" than an order and a subsequent pleading, after a direct appeal, that disputes it. Irrespective of how White describes his claim to those assets, the plain meaning of the Sale Order divested him of any "other interests" in them.  White was required to (and did) present any claims to the contrary during the claims resolution process.  He cannot now re-litigate the adverse result.

Finally, just as with his fraudulent conveyance claim, the theory underlying White's successor liability claim was previously rejected by this Court.  Among other allegations, appellant contends that Kubotek was somehow an "insider" of CADKEY, an argument that this Court rejected in White's original appeal. See In re Cadkey Corp., 317 B.R. at 22.

**ORDER**

In accordance with the foregoing (and to restate an order already entered, Docket No. 25), the plaintiff-appellant's Motion to Remand (Docket No. 9) is **DENIED** and the Bankruptcy Appeal (Docket No. 1) is **DISMISSED**.  The defendant-appellee's Motion to Strike plaintiff-appellant's supplemental filings (Docket No. 23) is **DENIED**, as moot.


**So ordered.**

                                     /s/ Nathaniel M. Gorton

                                    Nathaniel M. Gorton
                                    United States District Judge
Dated October    , 2012